# EXHIBIT 2

**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick, State Bar No. 004738
Seventh Floor Camelback Esplanade II
2525 E. Camelback Road
Phoenix, AZ 85016
Telephone: (602) 255-6000
Email: rgh@tblaw.com

*[Proposed] Liaison Counsel for Movant Baio and the Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*Admitted pro hac vice*)
Laurence M. Rosen (*Admitted pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Movant Baio and the Class*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Borteanu, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Nikola Corporation; Trevor R. Milton; Steve Girsky; Steve Shindler; Mark A. Russell; and Kim J. Brady,<br><br>Defendants.<br><br>[Additional captions below] | No. 2:20-cv-01797-PHX-SPL<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>**JUDGE: Steven P. Logan** |

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

| | |
|---|---|
| John L. Wojichowski, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Nikola Corporation, Trevor Milton, Mark A. Russell, and Kim J. Brady,<br><br>Defendants. | No. 2:20-cv-01819-DLR<br><br>**JUDGE: Douglas L. Rayes** |
| Albert Holzmacher; Michael Wood; and Tate Wood, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Nikola Corporation; Trevor R. Milton; Mark A. Russell; Kim J. Brady; Stephen J. Girsky; and Steven M. Shindler,<br><br>Defendants. | No. 2:20-cv-02123-JJT<br><br>**JUDGE: John J. Tuchi** |
| William Eves, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Nikola Corporation, Trevor R. Milton, Mark A. Russell, and Kim Brady,<br><br>Defendants. | No. 2:20-cv-02168-DLR<br><br>**JUDGE: Douglas L. Rayes** |

2

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

## MEMORANDUM OF LAW IN OPPOSITION TO
## COMPETING LEAD PLAINTIFF MOTIONS

Movant Angelo Baio ("Mr. Baio") respectfully submits Memorandum of Law in Opposition to Competing Motions to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel. (Dkt. Nos. 19, 20, 24, 25, 28, 30, 32).

Mr. Baio, as explained in his opening brief, is a sophisticated investor in North Carolina (Dkt. No. 17 at 8). Mr. Baio lost $703,459 (Dkt. No. 18-3).

Four movants claim a larger financial interest than Mr. Baio:

- T3 Trading Group ($15,079,493 in losses) ("T3 Trading") — a proprietary day-trading brokerage is attempting to aggregate losses of 188 of its traders and 2 customer accounts;

- The lawyer-styled Nikola Investor Group (the "Nikola Group") ($1,525,627 in losses) consisting of three unrelated individuals from Texas, California, and New Jersey represented by four law firms[1];

- The lawyer-styled Investor Group ($1,332,589 in losses) consisting of four unrelated individuals from Florida, New Jersey, Connecticut and Maryland[2].

- Nayankumar Patel ("Patel") ($1,525,627 in losses).

However, none of the competing movants have made the initial showing of Rule 23 adequacy and typicality required to trigger the most adequate plaintiff presumption under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii). It is critical to note that courts determining the most adequate lead plaintiff do not merely perform a rote mathematical

---

[1] The Nikola Group consists of George Mersho, Vincent (Vi Kinh) Chau, and Stanley Karczynski.

[2] The Investor Group consists of Theresa Grant Haun, Krishna Kusupudi, Nick Youn, and Alejandro Ramos. On November 30, 2020, the Investor Group filed a notice of non-opposition to the competing lead plaintiff motions. Dkt. No. 37. Since the Investor Group's motion was not withdrawn, Mr. Baio addresses the Investor Group's motion herein.

3

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

calculation of comparing alleged losses. Numerical loss is only the first step in the process. The second step is analyzing a proposed lead plaintiff's typicality and adequacy under Rule 23.

Here, T3 Trading Group is inadequate and atypical. T3 Trading is attempting to aggregate the losses of 188 individual traders and two customers (Dkt. No. 27-8 at 8), who appear to be the actual beneficial owners. Thus, T3 Trading lacks standing to represent the losses of its 188 traders and two customer accounts, without assignments of claims. Additionally, T3 Trading is a day-trading firm that day-traded Nikola securities—rendering it atypical and inadequate. T3 Trading also increased its holding of Nikola after September 10, 2020—when the Hindenburg Research report (the "Hindenburg Report") was issued disclosing the fraud.

The Nikola Group and Investor Group are inappropriate group movants solely brought together by counsel to create the largest financial interest. Their members are dispersed throughout the country and represented by a number of law firms, and no specific client driven reasons are provided for the groupings. The joint declarations submitted by the two groups are the type of general conclusory declarations that courts have rejected. Additionally, the Nikola Group's initial submissions are littered with errors which further demonstrate that it is not a well-functioning group even though it is represented by *four law firms*. The Nikola Group provides no client driven nor class driven reason why the grouping and *four law firms* are necessary.

Mr. Patel failed to demonstrate his adequacy and typicality. Mr. Patel did not provide any background information about himself with his motion. This lack of information is preventing other movants from properly vetting him. Additionally, Mr. Patel, like T3 Trading, engaged in high frequency trading and bought a significant amount of shares after the Hindenburg Report that disclosed the fraud.

In contrast to the inadequate and atypical movants noted above, Mr. Baio lost $703,459. Mr. Baio is a sophisticated investor. Prior to his retirement, Mr. Baio was the director of special investigations of an insurance company. Dkt. No. 17 at 8. Mr. Baio

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

earned a Bachelor of Arts in Science, Math, and Tech. *Id*. In short, Mr. Baio should be appointed Lead Plaintiff, and his selection of Lead Counsel should be approved.

## ARGUMENT

## I. T3 TRADING IS INADEQUATE AND ATYPICAL

### A. T3 Trading Lacks Standing

T3 Trading is a SEC registered broker dealer.[3] T3 Trading engages in proprietary day trading.[4] T3 Trading hires traders and requires them to make a capital contribution. After payment of transaction costs, T3 Trading splits profits with the trader.[5] As to trading losses a "trader may be held personally liable for trading losses liable for trading losses that exceed the amount of the proprietary account associated with such trader."[6]

Therefore, T3 Trading's traders appear to be the beneficial owners of the Nikola securities they traded.[7] As such, T3 Trading was required to obtain an assignment of claims from each of its traders and its two customers at the time it made its lead plaintiff motion. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,* 549 F.3d 100, (2d Cir. 2008) (investment firm lacked standing as its clients were the beneficial owners, absent an assignment of claims to investment firm)*; In re Bard Associates, Inc.*, 2009 WL 4350780, at *2 (10th Cir. Dec. 2, 2009) (standing is required at the time the lead plaintiff motion was filed, thus assignment of claims were required at the time the lead plaintiff motions were filed).

Even if T3 Trading may arguably have standing (it does not), "courts in securities class actions have found that the uncertain standing of a class representative creates unique

---

[3] https://www.t3trading.com/about-us/.

[4] *Id*.

[5] https://www.linkedin.com/jobs/view/proprietary-day-trader-positions-at-t3-trading-group-llc-2298205281/

[6] https://www.t3trading.com/risk-disclosure/

[7] "A beneficial owner is a person who enjoys the benefits of ownership though the property's title is in another name." https://www.investopedia.com/terms/b/beneficialowner.asp

5

legal issues for that plaintiff and destroys its typicality and adequacy as a class representative." *South Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 659 (W.D. Wash. 2011) (citing *In re IMAX Sec. Litig.*, 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (investment advisor was an atypical and inadequate class representative, regardless of whether assignments cured its deficient standing, because its standing issues "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal"); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (investment advisor did not satisfy the adequacy or typicality requirements because "even if [the] Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise"); *see also Baydale v. Am. Express Co.*, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009). "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff ... then the named plaintiff is not a proper class representative." *Koos v. First Nat'l Bank,* 496 F.2d 1162, 1164 (7th Cir. 1974).

**B.    T3 Trading's Day-Trading and Structure Renders it Inadequate and Atypical**

T3 Trading is an admitted day-trading firm engaged in sophisticated trading strategies that the typical investor is not engaged in. Indeed, based on T3 Trading submissions it traded 17,625,082 Nikola shares and bought and sold Nikola stock almost on a daily basis from July 7, 2020 through October 14, 2020. Courts refuse to appoint day-traders as they are subject to unique reliance defenses. *Tsirekidze v. Syntax-Brillian Corp.,* 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (finding day trader atypical because such trading "belies any true reliance on company reports or even on the integrity of the stock price itself"); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *1 (N.D. Cal. Aug. 22, 2008) (finding a day trader atypical from the class "because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility"); *In re Opnext, Inc. Sec. Litig.,* 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) (finding movant atypical because "[d]ay trading is not commensurate with the

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

manner in which the typical class member sustained alleged losses").

Additionally, T3 Trading bought and sold a significant portion of its holdings after the September 10, 2020 Hindenburg Report that revealed the fraud. Courts refuse to appoint lead plaintiffs that made significant purchases after the disclosure of fraud. *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("This court has consistently held that 'a person that increasing his holdings in a security after the revelation of an alleged fraud involving hat security is subject to an unique defense that precludes him from serving as a class representative.'") (quoting *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69 (S.D.N.Y. 2000)); *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) (rejecting lead plaintiff movant because of his significant post fraud disclosure purchases "could undermine his ability to assert the fraud-on-the-market presumption of reliance.").

Moreover, while T3 Trading's submission notes it is providing trading information from 188 of its traders and 2 customers, it is unclear whether T3 Trading has provided the trading information for all of its traders and customers. According to a recent Linkedin job positing seeking day-traders, T3 Trading has 275 employees.[8] T3 Trading cannot be allowed to pick and choose which accounts to include—particularly if certain accounts had large profits or engaged in unusual trading strategies. *See In re Groupo Televisa Sec. Litig.*, 2020 WL 3050550, at *7 (S.D.N.Y. Jun. 8, 2020) (rejecting proposed class representative as it had an investment in an entity that shorted the issuer and had substantial profits).

Additionally, the appointment of T3 Trading creates costly and immense practical problems. Each of the 188 traders are subject to discovery as to reliance as each trader made their own individual investment decisions. There are also unique discovery issues as to each of the traders' investment in Nikola in other personal accounts. *See id.* (taking into account investments of issuer in other accounts, and finding such other investments

---

[8] https://www.linkedin.com/jobs/view/proprietary-day-trader-positions-at-t3-trading-group-llc-2298205281/.

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

rendered lead plaintiff inadequate and atypical). The appointment of T3 Trading will unnecessarily create unique side litigation on discovery issues relating to its 188 traders and 2 customer accounts. None of this is in the best interest of the putative class. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class....[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Sayce v. Forescout Tech., Inc.*, 2020 WL 6802469, at *4 (N.D. Cal. Nov. 19, 2020) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Importantly, "[t]here is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial." *In re Snap*, 2019 WL 2223800, at *2 (citing *In re Netflix Inc., Sec. Litig.*, 2012 WL 1496171, at * 5 (N.D. Cal. Apr. 27, 2012)).

In summary, T3 Trading has failed to make an initial showing of adequacy and typicality, has not triggered the most adequate plaintiff presumption, and should be rejected.

## II. NIKOLA GROUP AND INVESTOR GROUP ARE INADEQUATE AND ATYPICAL

### A. Nikola Group and Investor Group are Improper Lawyer-Made Groups of Unrelated Investors

"Although the PSLRA allows groups to serve as lead plaintiffs, 'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Tsirekidze*, 2008 WL 942273, at *3 (quoting *In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002)); *see also In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019); *Eichenholtz*, 2008 WL 3925289, at *7.

Courts require members of a group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the

8

litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Kniffin v. Micron Tech., Inc.,* 379 F. Supp. 3d 259, 262 (S.D.N.Y. 2019). Courts evaluate evidence of:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*See id.*; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008).

While the Nikola Group and the Investor Group submitted joint declarations in an effort to meet this burden, their boilerplate declarations are insufficient. While the Groups assert that their members spoke with each other prior to the lead plaintiff motion being filed, "what is conspicuously absent [. . .] is any information regarding how these [. . .] apparent strangers [. . .] found each other." *Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*" whose members "span[] the country's geography"); *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently); *Kniffin*, 379 F. Supp. 3d at 263 (court not persuaded by declaration that the group would function cohesively); *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation" (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation"); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 (D.N.J. Nov. 6, 2018), *reconsideration denied*, 2019 WL 2710273 (D.N.J. June 26, 2019) (denying lead

9

plaintiff status to a group of investors because the "joint declaration [did] not allay the [] court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff.")

Lastly, the Court should not permit the members of the two Groups to be considered individually as the Groups did not request that any of its constituents be appointed as lead plaintiff individually in the event the Court did not appoint the Groups. Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See In re Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze*, 2008 WL 942273, at *4 (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *Jakobsen*, 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed as lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis); *Takata*, 2018 WL 5801379, at *5 (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts.").

In short, as the *Tsirekidze* Court noted, "[t]here is simply no evidence that [these] group[s] ha[ve] a meaningful connection" and the Court should deny the motions of the Nikola Group and the Investor Group. 2008 WL 942273, at *5.

### B. Other Facts Demonstrating That Nikola Group is Inadequate

The Nikola Group failed to provide any specific client driven justification for having four law firms on the case. There is simply no need for multiple lead counsel and other counsel in this straight-forward case—where substantial facts revealing the fraud is in the public domain and where there are a number of regulatory investigations.

Moreover, it appears these four firms are not functioning in a cohesive manner. The Group's papers misspell Stanley Karczynski's name in its motion documents as compared to his certification. *Compare* Dkt. Nos. 24-4 at 7-11 and 24 at 7, 24-2, and 24-5 at 2. Mr. Karczynski's certification does not attach the assignment of claims he claims he obtained from his two sons. *See* Dkt. No. 24-4. These errors further demonstrate that amalgamation of multiple plaintiffs and multiple law firms that comprise the Nikola Group is not well-functioning group and will not benefit the class.

### C. Other Facts Demonstrating That Investor Group is Inadequate and Atypical

Theresa Grant Haun, the first-listed group member of the Investor Group, sold all of her Nikola shares before the first alleged partial disclosure rendering her a complete in-and-out trader with no compensable losses. Courts do not count the financial losses of complete "in and out" traders and reject them as atypical and inadequate. *See Bensley v. Falconstor*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (not counting losses of complete in and out trades, and finding complete in and out trader inadequate and atypical); *see also, In re McKesson HBOC, Inc., Sec. Litig.*, 97 F.Supp.2d 993 (N.D. Cal. 1999) (holding that it was inappropriate to count losses or profits by "in-and-out" traders and assuming a constant fraud premium despite movant's argument that partial disclosures may have begun seeping into the pool of information available to the investors).

### III. MR. PATEL IS INADEQUATE AND ATYPICAL

Mr. Patel did not provide any background information on himself. This makes it impossible for the Court to make a determination on Patel's adequacy and typicality. Courts have held that movants who provide such sparse information are inadequate to

11

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

represent the class. *See, e.g., Camp v. Qualcomm Inc.*, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019); *Perez v. HEXO Corp.*, 2020 WL 905753, at *2-3 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020); *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019), *reconsideration denied,* 2020 WL 476658 (N.D. Ill. Jan. 28, 2020).

Patel also engaged in high frequency trading. Patel provided twelve pages of trades over only a four-month period (he also made one sale in November). Dkt. No. 19-4. As explained above, high frequency traders are routinely precluded as serving as a lead plaintiff. *See Tsirekdize*, 2008 WL 942273, at * 4, *supra.*

Patel also purchased a significant number of shares after the Hindenburg Report disclosed the fraud. As noted above, such post fraud disclosures render him atypical and inadequate. *See Rocco*, 245 F.R.D. at 136*, supra.*

## IV. MR. BAIO SHOULD BE APPOINTED LEAD PLAINTIFF

Mr. Baio, with losses of $703,459, is the presumptive Lead Plaintiff as he has the remaining largest financial interest *and* satisfies the typicality and adequacy requirements of Rule 23. Mr. Baio should be appointed Lead Plaintiff, and his selection of Lead Counsel should be approved.

To overcome the strong presumption entitling Mr. Baio to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case, and any arguments to the contrary should be flatly rejected. Competing movants may attempt to conjure up speculative arguments to rebut the presumption in favor of Mr. Baio. Any such speculative challenge does not satisfy the PSLRA's requirement that the presumptively most adequate plaintiff may only be rejected if a rival movant presents "proof" that the presumptive Lead Plaintiff, here Mr. Baio, will not adequately protect the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Lomingkit v. Apollo Educ. Grp. Inc.*, 2016 WL 3345514, at *2 (D. Ariz. June 16, 2016).

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

As Mr. Baio has made a demonstration of his typicality and adequacy and has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Mr. Baio must be appointed Lead Plaintiff.

## V.     MR. BAIO'S SELECTION OF COUNSEL SHOULD BE APPOINTED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. See 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). *See also In re Cavanaugh,* 306 F.3d 726, 734 n. 14 (9th Cir. 2002).

Mr. Baio has selected The Rosen Law Firm, P.A. as Lead Counsel and Tiffany & Bosco as Liaison Counsel. The firms have the resources and expertise to litigate this action efficiently and aggressively. As the firms' resume reflect, they are highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 18-4. Thus, the Court may be assured that by approving Mr. Baio's selection of counsel, the members of the class will receive excellent legal representation.

## CONCLUSION

For the foregoing reasons, Mr. Baio respectfully requests the Court issue an Order: (1) consolidating the related actions; (2) appointing Mr. Baio as Lead Plaintiff of the Class; (3) approving Mr. Baio's selection of The Rosen Law Firm P.A. as Lead Counsel and Tiffany & Bosco P.A. as Liaison Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

.     .     .

.     .     .

.     .     .

13

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

Dated: November 30, 2020                    Respectfully submitted,


                                            **TIFFANY & BOSCO, P.A.**

                                            By: */s/ Richard G. Himelrick*
                                                  Richard G. Himelrick
                                                  Seventh Floor Camelback Esplanade II
                                                  2525 E. Camelback Road
                                                  Phoenix, AZ 85016

                                                  *[Proposed] Liaison Counsel for Movant*
                                                  *Baio and the Class*


                                            **THE ROSEN LAW FIRM, P.A.**
                                            Phillip Kim
                                            Laurence M. Rosen
                                            275 Madison Avenue, 40th Floor
                                            New York, NY 10016

                                            *[Proposed] Lead Counsel for Movant Baio*
                                            *and the Class*

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2020, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ Shelley Boettge*
Shelley Boettge

MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS