UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TOSHIF PATEL, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>                    v.<br><br>REATA PHARMACEUTICALS, INC., J. WARREN HUFF, and MANMEET S. SONI,<br><br>                              Defendants. | Case No.  4:20-cv-00796-SDJ<br><br>REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUKE G. MASSAR FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS |

Movant Massar[1] respectfully submits this reply memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of counsel; and in opposition to competing motions of (i) Francis (Dkt. No. 7) and (ii) Waterford Township (Dkt. No. 13).[2]

**PRELIMINARY STATEMENT**

The PSLRA instructs the Court to appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the litigation; and who satisfies the adequacy and typicality requirements of Rule 23.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The movant who satisfies both of the foregoing statutory criteria is entitled to a strong presumption that he is the "most adequate plaintiff" of the Class—*i.e.*, the Lead Plaintiff—a presumption that can be rebutted only upon

---

[1] All capitalized terms herein are defined in Massar's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 10, 19.

[2] One other putative Class member, Jason Childs ("Childs"), initially filed a similar competing motion.  Dkt. No. 11.  On December 28, 2020, Childs filed a notice stating his non-opposition to the competing motions.  Dkt. No. 20.

"*proof*" that the presumptive lead plaintiff is inadequate, atypical and/or subject to a unique defense.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).

Of the three competing movants before the Court, only Massar satisfies both of these statutory criteria.  *First*, Massar incurred losses of approximately *$1.16 million* in connection with his purchases of Reata securities as a result of the fraud alleged in the Action, significantly more than both competing movants *combined*.  Massar thus has the largest financial interest in this litigation within the meaning of the PSLRA.  *See, e.g.*, *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at *13-*15 (E.D. Tex. Feb. 28, 2014); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010).  *Second*, in addition to his significant financial interest, Massar has made the requisite *prima facie* showings of adequacy and typicality within the meaning of the PSLRA.  *Shiqiang Chen v. NQ Mobile*, No. 4:18-CV-00096, 2018 U.S. Dist. LEXIS 92672, at *5 (E.D. Tex. May 31, 2018); *Ramzan v. GDS Holdings, Ltd.*, No. 4:18CV539-ALM-KPJ, 2018 U.S. Dist. LEXIS 183758, at *9 (E.D. Tex. Oct. 26, 2018).

The two competing movants, Francis and Waterford Township, have both attempted to rebut the presumption in favor of Massar's appointment with meritless arguments, neither of which arguments find support in law or fact, and thus plainly do not constitute "proof" within the meaning of the PSLRA.  First, both of these competing movants argue that Massar's Class Period purchases of Reata options as well as common stock make him atypical and inadequate within the meaning of Rule 23, thereby disqualifying him from appointment as Lead Plaintiff.  *See* Dkt. No. 18 at 2-4; Dkt. No. 21 at 3-4.  Not so.  Courts routinely find options investors to be adequate and typical class representatives within the meaning of Rule 23 and appoint them as lead plaintiffs in PSLRA actions.  *See*, *e.g.*, *Hall v. Medicis Pharm. Corp.*, Nos. CV-08-1821-PHX-GMS *et al.*, 2009 U.S. Dist. LEXIS 24093, at *12-*13 (D. Ariz. Mar. 10, 2009); *Medina v. Clovis Oncology, Inc.*, No.

15-cv-2546-RM-MEH, 2016 U.S. Dist. LEXIS 19784, at \*11 (D. Colo. Feb. 18, 2016); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 348, 355 (S.D.N.Y. 2011).  Here, nothing about the nature of Massar's specific options transactions would render him an atypical or inadequate class representative.  Second, Francis also curiously argues that Massar's trading strategy "included material short sales"—*i.e.*, bets "that the price of Reata's stock would fall."  Dkt. No. 18 at 3.  This assertion is simply untrue as a matter of fact because, as his transaction schedule (Dkt. No. 14-5 at \*3) reflects, Massar did ***not*** sell Reata securities short during the Class Period.  Francis has not so much as cited a purported example of a short sale in Massar's transaction schedule, making the supposed basis for this erroneous argument impossible to identify.

Accordingly, for the reasons set forth herein and in his moving and opposition briefs, Massar respectfully requests that the Court grant his motion in its entirety and deny the competing motions of Francis and Waterford Township.

## ARGUMENT

### I.    THE STATUTORY PRESUMPTION IN FAVOR OF MASSAR'S APPOINTMENT HAS NOT BEEN REBUTTED

The PSLRA creates a strong presumption that the "most adequate plaintiff"—*i.e.*, the Lead Plaintiff—is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest need only make a *prima facie* showing at this stage that he or she satisfies the adequacy and typicality requirements of Rule 23.  *Singh v. 21 Vianet Grp., Inc.*, No. 2:14-cv-894-JRG-RSP, 2015 U.S. Dist. LEXIS 125385, at \*4 (E.D. Tex. Sept. 21, 2015).  Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

3

Here, as discussed in detail in Massar's opposition brief, Massar has satisfied the requisite financial interest and Rule 23 criteria to secure the presumption that he is the "most adequate plaintiff" of the Class, and thus the presumptive Lead Plaintiff. *See* Dkt. No. 19. This presumption in Massar's favor having been established, the competing movants have mustered only two meritless arguments against Massar's appointment, neither of which comes close to constituting the proof necessary to rebut the presumption.

### A. Massar's Options Transactions Do Not Render Him Inadequate or Atypical

Both Francis and Waterford Township argue that Massar is atypical and inadequate because his Class Period transactions in Reata securities included options trading. *See* Dkt. No. 18 at 2-3; Dkt. No. 21 at 3-6. While Francis and Waterford Township assert that Massar's options transactions disqualify him from Lead Plaintiff appointment, courts in fact regularly appoint options investors as lead plaintiffs, finding them to be adequate and typical within the meaning of Rule 23, and not subject to unique defenses. The opinion and order appointing a lead plaintiff in the PSLRA action *Hall v. Medicis Pharm. Corp.* is instructive. There, as here, the presumptive lead plaintiff movant, Steven Rand ("Rand"), purchased options during the class period, and on this basis alone, a competing movant, Steamfitters Local 449 Pension Fund ("Steamfitters") urged the court to deny Rand's motion. The court rejected the categorical approach urged by Steamfitters, finding that the mere fact of Rand's options purchases did not constitute "proof" to rebut the presumption in his favor:

> [T]he Court is reluctant to disqualify Rand simply because he trades in options. Had Steamfitters adduced some evidence specific to Rand suggesting that the nature of his options, the history of their purchase and sale, or some other factor made him inadequate to represent the class, then the Court might have occasion to disqualify him. In the absence of any such *specific* evidence, Steamfitters has *not* met its burden to provide '*proof*' that Rand will not fairly and adequately protect the interests of the class or is otherwise subject to unique defenses that would render him incapable of doing so.

4

*Id.* at \*12-\*13 (emphases added) (collecting cases). *See also Clovis Oncology*, 2016 U.S. Dist. LEXIS 19784, at \*11 (appointing options investor as lead plaintiff, finding that while it "may have held securities that other members of the class did not . . . the losses allegedly incurred on those securities are still premised on the same factual allegations and legal theories."); *Puda Coal*, 827 F. Supp. at 355 (S.D.N.Y. 2011) ("investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is . . . 'whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct.'") (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001)).

Here, nothing about the specific nature of Massar's Reata options investments disqualifies him from consideration. As his transaction schedule (Dkt. No. 14-5) and damages analysis (Dkt. No. 14-3) reflect, Massar purchased Reata call options during the Class Period—that is, contracts giving Massar the right, but not the obligation, to purchase Reata stock at specified prices within specific time periods. These call options represented a trading strategy reflecting Massar's expectation that Reata's share price would continue to ***increase***, rather than decrease—that is, Massar was betting on, rather than against, Reata's continued success. This makes Massar's claims against Reata entirely typical of those of other putative Class Members, who purchased Reata securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and who were damaged upon the disclosures of those misrepresentations and/or omissions that drove the price of Reata's securities downward. The fact that Massar purchased options rather than common stock does not deprive his claims of "'the same essential characteristics as those of the other class members.'" *Shiqiang*, 2018 U.S. Dist. LEXIS 92672, at \*5 (quoting *Marcus*, 2014 U.S. Dist. LEXIS 197529, at \*15 (quoting *Buettgen*, 263 F.R.D. at 381)); *Stein v. Match Group, Inc.*, No. 16-cv-549-L, 2016 WL 3194334, at \*5 (N.D.

Tex. June 9, 2016). "'Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001) (quoting 5 James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶ 23.24[4] (3d ed. 2000)). Nor do Massar's options purchases have any bearing on his adequacy. Having incurred a loss of approximately ***$1.16 million*** as a result of the fraud alleged in this action, Massar clearly has "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Ramzan*, 2018 U.S. Dist. LEXIS 183758, at *9; *Stein*, 2016 WL 3194334, at *5; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir. 1999) (indicating that "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests").

Moreover, the Complaint in this Action is ***expressly*** on behalf of an expansive putative "class consisting of all persons . . . . who purchased or otherwise acquired Reata ***securities***" during the Class Period. Dkt. No. 1 ¶ 1 (emphasis added). Francis and Waterford Township's argument would not only disqualify Massar from consideration as Lead Plaintiff, but would effectively redefine the putative Class to consist only of investors in Reata ***common stock***—a significantly more restrictive definition that conveniently includes Francis and Waterford Township yet excludes Massar and all other investors in options and other securities. Massar respectfully submits that the Court should be wary of any effort at this stage that "would have the effect of reducing the class size and limiting the potential amount of damages[.]" *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22,

2008). "Indeed, it is unclear why a plaintiff would argue for" such, "***unless it was in the best interest of that particular plaintiff only.***" *Id.* (emphasis added). Massar respectfully urges the Court to see Francis and Waterford Township's argument for what it is: a self-serving effort to secure leadership of the Class, at the expense of excluding numerous Reata investors from the Class, yet disingenuously cast as an effort to safeguard the Class's interests.

### B.  Massar Did Not Engage In Short Selling

Francis additionally asserts that Massar is atypical because his Reata investment strategy "included material short sales". Dkt. No. 18 at 3. This is demonstrably false because, as the record reflects, Massar did ***not*** engage in short selling of Reata securities during the Class Period. As required by the PSLRA, Massar submitted as Schedule A to his shareholder Certification a complete record of his Class Period transactions in Reata securities. *See* Dkt. No. 14-5 at *3. This transaction schedule does not reflect even a single short sale of Reata securities. Conspicuously, Francis's opposition brief does not so much as cite a single transaction that Francis has mischaracterized as a short sale, making it impossible even to determine the purported basis for his erroneous assertions. Tellingly, Waterford Township, although having joined Francis's equally unavailing arguments concerning Massar's options transactions (*see* Section I.A., *supra*), has ***not*** likewise argued that Massar engaged in short selling, despite obviously sharing Francis's interest in rebutting the presumption in favor of Massar's appointment. Had there been a factual basis for this argument, presumably Waterford Township would have made it as well.

### CONCLUSION

For all of the foregoing reasons, Massar respectfully requests that this Court enter an order (1) appointing Massar as Lead Plaintiff; and (2) approving Massar's selection of Lead Counsel and Liaison Counsel for the Class.

Dated:  January 4, 2021

Respectfully Submitted,

*/s/ Willie C. Briscoe*
WILLIE C. BRISCOE
State Bar Number 24001788
THE BRISCOE LAW FIRM, PLLC
12700 Park Central Drive, Suite 520
Dallas, TX 75251
Telephone: 972-521-6868
Facsimile: 281-254-7789
wbriscoe@thebriscoelawfirm.co

*Counsel for Movant and*
*Proposed Liaison Counsel for the Class*

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application pending)
J. Alexander Hood II
(*pro hac vice* application pending)
James M. LoPiano
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Movant and*
*Proposed Lead Counsel for the Class*

8

KEHOE LAW FIRM, P.C.
Michael K. Yarnoff
(*pro hac vice* application forthcoming)
2 Penn Center Plaza, Suite 1020
1500 JFK Boulevard
Philadelphia, Pennsylvania 19102
Telephone: (215) 792-6676
myarnoff@kehoelawfirm.com

*Additional Counsel for Movant*

## CERTIFICATE OF SERVICE

This is to certify that on January 4, 2021, I have caused to be filed the above and foregoing on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and exact copies of this filing.

*/s/ Willie C. Briscoe*
WILLIE C. BRISCOE