UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TOSHIF PATEL, Individually and On Behalf of All Others Similarly Situated | § § § § | |
| v. | § § | CIVIL NO. 4:20-CV-796-SDJ |
| REATA PHARMACEUTICALS, INC., ET AL. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following competing motions for appointment as lead plaintiff in this proposed securities class action: (1) Motion of Russell Francis, Sr. for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel, (Dkt. #7); (2) Motion of Jason Childs for Appointment as Lead Plaintiff and Approval of His Selection of Counsel, (Dkt. #11); (3) Motion of Waterford Township General Employees Retirement System as Lead Plaintiff and Approval of Selection of Counsel, (Dkt. #13); and (4) Motion of Luke G. Massar for Appointment as Lead Plaintiff and Approval of Lead Counsel, (Dkt. #14). For the following reasons, the Court **GRANTS** Francis's motion and **DENIES** the remaining motions.

## I. BACKGROUND

Defendant Reata Pharmaceuticals, Inc. ("Reata"), headquartered in Plano, Texas, is a "clinical stage biopharmaceutical company that develops novel therapeutics for patients with serious or life-threatening diseases by targeting molecular pathways that regulate cellular metabolism and inflammation." (Dkt. #1 ¶ 2).

1

In October 2019, Reata was, and currently is, developing a drug called "omaveloxolone," which was and remains in Phase Two[1] clinical development to treat Friedreich's ataxia ("FA") within the United States. On October 14, 2019, during after-market hours, Reata issued a press release announcing positive outcomes from its Phase Two "MOXIe" clinical trial of omaveloxolone. The statement provided, inter alia, that patients treated with the drug experienced a "statistically significant . . . improvement" in their condition and that "[t]he MOXIe trial . . . is the first study to demonstrate a significant improvement in neurological function in patients with FA." (Dkt. #1 ¶ 21). The press release further indicated that Reata would seek marketing approval for the drug in the United States and internationally.

On August 10, 2020, during pre-market hours, Reata issued a press release that included the company's second-quarter 2020 financial results and announced that "the FDA is not convinced that the MOXIe Part Two results will support a single study approval" and that Reata would "need to conduct a second pivotal trial that confirms the mFARS results of the MOXIe Part 2 study with a similar magnitude of effect." (Dkt. #1 ¶¶ 5, 32). On the same day that Reata issued this press release, Reata's stock price fell nearly fifty-two dollars per share, or about thirty-three percent. (Dkt. #1 ¶ 33).

---

[1] The FDA administers a five-step process for drug development. *The Drug Development Process*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/patients/learn-about-drug-and-device-approvals/drug-development-process (Jan. 4, 2018). "Clinical Research or Development"—the third step in the FDA's process—in turn has four "phases." *Step 3: Clinical Research*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/patients/drug-development-process/step-3-clinical-research (Jan. 4, 2018). Phase Two involves up to several hundred study participants suffering from the target condition and can last from several months to two years. *Id.*

On October 15, 2020, Plaintiff Toshif Patel initiated this action against Reata, its Chief Executive Officer, J. Warren Huff, and its Chief Financial Officer, Manmeet S. Soni, on behalf of anyone who purchased or otherwise acquired Reata securities between October 15, 2019, and August 7, 2020 (the "Class Period"). (Dkt. #1 ¶ 1). First, Patel alleges that Defendants, in announcing Reata's ostensibly positive Phase Two clinical data, made "materially false and misleading statements regarding [Reata's] business, operational, and compliance policies," in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Act") and Rule 10b-5 promulgated thereunder. (Dkt. #1 ¶¶ 1, 4). Second, Patel claims that Defendants violated the Act by failing to timely disclose that the MOXIe Part Two study results were insufficient, without additional evidence, to win marketing approval of omaveloxolone for the treatment of FA in the United States. (Dkt. #1 ¶ 4).

On October 15, 2020, the same day that Patel filed the Complaint, Patel issued a Private Securities Litigation Reform Act ("PSLRA") early notice via *PRNewswire*, a widely circulated national business-oriented wire service. (Dkt. #11 at 5). The notice served to advise other potential class members of the claims alleged in the Complaint and announced that the deadline for class members to move for appointment as lead plaintiff was December 14, 2020. (Dkt. #8-2). On December 14, 2020, four separate movants sought appointment as lead plaintiff and approval of their respective choice of lead counsel under the PSLRA: Russel Francis, Sr., Jason Childs, Waterford Township General Employees Retirement System ("Retirement System"), and Luke G. Massar. (Dkt. #7, #11, #12, #13). Francis is a New York resident and individual

investor with more than twenty-five years of investing experience. (Dkt. #8 at 5). Childs is a Michigan resident and individual investor with over twenty years of investing experience. (Dkt. #11 at 2). Retirement System is an institutional investor and Michigan-based benefit plan providing benefits to current and former employees of Waterford Township, Michigan. (Dkt. #13 at 6). Massar is an individual investor and Wisconsin resident with thirty years of investing experience. (Dkt. #14-6 ¶ 2).

Childs filed a Notice of Non-Opposition, (Dkt. #20), on December 28, 2020, conceding that he did not have the largest financial interest in the relief sought, as required by the PSLRA. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

## II. LEGAL STANDARD

The PSLRA outlines the procedure for appointing a lead plaintiff in a private securities action "that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(1). Within twenty days of filing a class action complaint under the PSLRA, the plaintiff(s) must ensure publication of a notice in a widely circulated business publication or wire service. 15 U.S.C. § 78u–4(a)(3)(A)(i). The publication should advise members of the class of, inter alia: the claims asserted in the complaint, the relevant class period, and the fact that not later than sixty days after the date of publication, any member of the purported class may move the Court to serve as lead plaintiff. *Id.* The Court must consider each motion for appointment as lead plaintiff and appoint the movant that is "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i).

Under the PSLRA, courts should adopt a presumption that the most adequate plaintiff to represent the class is the person or group of persons that: (1) has filed the complaint or made a timely motion in response to a notice; (2) by the Court's determination, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). This presumption may be rebutted if a member of the purported class produces proof that the presumptive lead plaintiff: (1) is subject to unique defenses; or (2) will not adequately and fairly represent the class's interest. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Once the Court determines the most adequate plaintiff, it may approve the counsel selected and retained by the lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(v).

### III. DISCUSSION

### A. Timeliness of the Notice and Lead-Plaintiff Motions

Notice of this PSLRA action was timely published on October 15, 2020, the same day the Complaint was filed, in *PRNewswire*, a widely circulated national business-oriented wire service. (Dkt. #11 at 5). The notice provided the required information, including a description of the claims asserted, the proposed class, and the right of any putative class member to move for appointment as lead plaintiff. *Id*. No challenge to the adequacy of the October 15, 2020 notice has been raised. The Court therefore finds that the initial notice requirement has been met.

The various competing motions for appointment as lead plaintiff have also been timely filed within the PSLRA's sixty-day deadline. 15 U.S.C. § 78u–

4(a)(3)(B)(iii)(I)(aa). Francis and Retirement System each moved for appointment as lead plaintiff on December 14, 2020. (Dkt. #7, #13). Also on December 14, 2020, Massar attempted to move for appointment as lead plaintiff, (Dkt. #10), but had to refile due to failure to provide a Certificate of Conference, as required by Local Rule CV-7(i). Massar's refiled motion, (Dkt. #14), which complied with the Local Rule, was made after the sixty-day deadline but is otherwise substantively identical to the original motion made within the deadline. Because Massar's technical error "does not implicate concerns animating the PSLRA's [deadline] requirement, such as litigants 'jockeying' for better position," the Court will also consider Massar's motion. *Micholle v. Ophthotech Corp.*, No. 17-CV-1758, 2018 WL 1307285, at *7 (S.D.N.Y. Mar. 13, 2018) (quoting *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F.Supp.3d 523, 535 (S.D.N.Y. 2015)).

## B. Largest Financial Interest

Under the PSLRA, courts are to presume that the plaintiff with the "largest financial interest in the relief sought by the class" is the lead plaintiff, so long as he or she otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). To determine the financial interest of a lead-plaintiff movant under the PSLRA, courts in the Fifth Circuit have applied the factors set out in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2716, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). *See, e.g.*, *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 WL 11394911, at *4 (E.D. Tex. Feb. 28, 2014); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F.Supp.2d 401, 414 (S.D. Tex. 2000); *Brody v. Zix Corp.*, No. 3:04-CV-1931, 2005

WL 8158375, at *2 (N.D. Tex. July 11, 2005). The *Lax* factors include: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. 1997 WL 461036, at *5. Courts have held that the fourth factor, the loss suffered, is the determinative factor in this financial-interest analysis. *Giovagnoli v. GlobalSCAPE, Inc.*, No. SA-17-CV-753, 2017 WL 11220692, at *3 (W.D. Tex. Nov. 6, 2017) (collecting cases).[2]

Of the lead-plaintiff movants, Massar sustained the largest overall financial loss, totaling approximately $1,164,107.00. *See* (Dkt. #14-3). However, relevant to the Rule 23 inquiry, Massar's losses arose exclusively out of Reata option contracts that he purchased during the Class Period. *See, e.g.*, (Dkt. #14-3).[3] As for Massar's common-stock transactions, Massar actually experienced a profit of approximately $35,060.00, having sold his 2,000 shares of Reata common stock before the end of the Class Period. *See* (Dkt. #14-3). Francis sustained the second largest loss, totaling

---

[2] In fact, most courts, in conducting this financial-interest analysis, look exclusively to "which potential lead plaintiff has suffered the greatest total losses." *Takara Tr. v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005); *see also, e.g.*, *Giovagnoli*, 2017 WL 11220692, at *3 (analyzing only the fourth factor). It is logical that courts would deem the fourth factor conclusive because this factor is a function of the first three. In view of the foregoing, the Court will proceed to analyze only the fourth *Lax* factor.

[3] An option contract, in the securities context, is "[t]he right (but not the obligation) to buy or sell a given quantity of securities, commodities, or other assets at a fixed price within a specified time." *Option*, BLACK'S LAW DICTIONARY (11th ed. 2019). A *call* option refers to the right to *buy* securities, whereas a *put* option refers to the right to *sell* securities. *Id.* Common stock, or common share, by contrast, is defined as "[a] class of stock entitling the holder . . . to receive dividends . . . and to share in assets upon liquidation." *Stock*, BLACK'S LAW DICTIONARY (11th ed. 2019).

$73,420.00, which was entirely based on common-stock purchases. *See* (Dkt. #8-4). Childs suffered the third largest loss of the four lead-plaintiff movants, summing $51,593.45. (Dkt. #11 at 6). And Retirement System incurred losses of $31,704.00, also entirely based on common-stock purchases. *See* (Dkt. #13-4). Massar therefore suffered the largest financial loss from Reata's share-price decline during the relevant class period. Thus, under Section 78u–4(a)(3)(B)(iii)(I)(bb), Massar enjoys a presumption that he is the lead plaintiff, so long as he satisfies the relevant Rule 23 requirements.

## C. Typicality and Adequacy Under Rule 23

The PSLRA also requires that a presumptive lead plaintiff, in addition to having incurred the greatest financial loss, must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). However, in this Rule 23 evaluation, "only the typicality and adequacy prongs . . . are relevant." *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 WL 11394911, at *5 (E.D. Tex. Feb. 28, 2014) (citation omitted); *Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449, 2017 WL 3780164, at *4 (E.D. Tex. Aug. 31, 2017). Thus, to satisfy the Rule 23 requirements under the PSLRA, a lead plaintiff must have claims or defenses that are "typical of the claims or defenses of the class," and the lead plaintiff must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

Notably, for purposes of Rule 23 analysis under the PSLRA, the Court "need not raise its inquiry to the level required in ruling on a motion for class certification."

*Hohenstein v. Behringer Harvard REIT I, Inc.*, No. 3:12-CV-3772, 2012 WL 6625382, at *2 (N.D. Tex. Dec. 20, 2012). Rather, it is sufficient that a lead-plaintiff movant make only a prima facie showing that he or she satisfies the typicality and adequacy requirements of Rule 23. *Singh v. 21 Vianet Grp., Inc.*, No. 2:14-CV-894, 2015 WL 5604385, at *1 (E.D. Tex. Sept. 21, 2015).

To be "typical" of the class, the potential lead plaintiff's claim must have "the same essential characteristics as those of the other class members." *Marcus*, 2014 WL 11394911, at *5 (citation omitted), such that "the incentives of the plaintiffs are aligned with those of the class." *Hohenstein*, 2012 WL 6625382, at *3 (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006)). Further, a lead-plaintiff movant is adequate when he or she is "prepared to prosecute the action vigorously," *Stein v. Match Grp., Inc.*, No. 3:16-CV-549, 2016 WL 3194334, at *5 (N.D. Tex. June 9, 2016) (citation omitted), and when no conflicts exist between the named plaintiffs' interests and the class members' interests. *James v. City of Dallas.*, 254 F.3d 551, 571 (5th Cir. 2001) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625–26 (5th Cir. 1999)).

Finally, where a potential lead plaintiff has satisfied the PSLRA requirements to become the presumptive lead plaintiff, this presumption may be rebutted upon proof that the presumptive lead plaintiff is subject to unique defenses or would not adequately and fairly represent the class's interest. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

### i. Whether Massar Satisfies Rule 23's Typicality and Adequacy Requirements

The Fifth Circuit has not addressed whether movants who invest primarily or wholly in options can qualify as lead plaintiffs representing a class that consists largely of common stockholders.[4] However, other courts have held that movants who invest only in options are atypical of a class comprising common shareholders. *See, e.g.*, *Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005); *Margolis v. Caterpillar, Inc.*, 815 F.Supp. 1150, 1156 (C.D. Ill. 1991); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F.Supp.3d 833, 836 (N.D. Cal. 2019); *Applestein v. Medivation, Inc.*, No. C 10-00998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010). *But see, e.g.*, *In re Scientific–Atlanta, Inc. Sec. Litig.*, 571 F.Supp.2d 1315, 1330–31 (N.D. Ga. 2007) (finding an options trader suitable to lead a class in a securities class action); *In re Donnkenny Inc., Sec. Litig.*, 171 F.R.D. 156, 156 (S.D.N.Y. 1997) (holding that an options trader who purchased both options *and* common stock was an adequate lead plaintiff). And, particularly relevant here, some courts have held that lead-plaintiff movants are atypical of or inadequate to represent a class largely consisting of common shareholders when a substantial portion of their losses are based on options. *See, e.g.*, *Cook v. Allergn PLC*, No. 18 Civ.

---

[4] The information before the Court indicates that the average Reata investor acquired common stock rather than options during the Class Period. This conclusion is supported first by the fact that all lead-plaintiff movants other than Massar purchased exclusively common stock. *See* (Dkt. #7, #11, #13). Moreover, Massar's substantial options trading during the Class Period further indicates that Reata securities purchasers during the Class Period predominantly traded in common stock. For example, Massar purchased ninety-nine percent of the available 02/19/21 C200 option contracts during the Class Period, *see* (Dkt. #14-5 at 3); (Dkt. #21-2 at 2), eighty-one percent of the 11/20/20 C160 option contracts, and seventy-eight percent of the 11/20/20 C160 option contracts, *see* (Dkt. #14-5 at 3); (Dkt. #21-2 at 10–11).

12089, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019); *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 CIV. 5865, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020).

In *Cook*, for instance, the court held that a lead-plaintiff movant was atypical of the class where approximately sixty percent of the movant's losses came from options trading. *Cook*, 2019 WL 1510894, at *2. The *Cook* court reasoned that appointing the options investor as lead plaintiff very likely "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and . . . could subject the class to unique defenses, causing unnecessary conflict." *Id.* (quoting *In re Elan Corp. Sec. Litig.*, No. 08 Civ. 08761, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009)).

Similarly, in *Di Scala*, the lead-plaintiff movant with the highest financial interest was an options investor who lost about $18.2 million due to the defendant's declining share price, and the movant with the next largest financial interest lost about $2.4 million. *Di Scala*, 2020 WL 7698321, at *2. Despite the roughly sixteen-million-dollar difference in financial interests between the two movants, the *Di Scala* court held that the movant with the highest financial interest was atypical of the class where eighty-two percent of his losses were based on options trading. *Id.* at *4. Like in *Cook*, the *Di Scala* court reasoned that the options investor was potentially not "motivated by the same market incentives as class members who traded shares on the open market," and thus, his appointment as lead plaintiff raised the concern that issues unique to the options investor would "threaten to become the focus of the

litigation" at the class-certification stage and otherwise. *Id.* (citation omitted); *accord Applestein*, 2010 WL 3749406, at *4 (holding that the lead-plaintiff movant's options trading had the potential to distract from the lawsuit's central issue: whether the defendant committed fraud on the market).

Here, it is undisputed that Massar has the highest financial interest of the lead-plaintiff movants—with financial losses of $1,164,107.00 stemming from Reata's falling share price. However, like in *Cook* and *Di Scala*, the fact that Massar's losses during the Class Period were based solely on option contracts renders Massar atypical of the putative class. And while Massar did trade in both common stock and options during the Class Period, his losses arose exclusively from his options; in fact, Massar profited from his common-stock investments. *See* (Dkt. #14-3). This material gain in common stocks makes Massar's trading practices during the Class Period functionally the same as an investor who traded only in options and materially different from the putative class consisting largely of common stockholders.[5]

In rebuttal, Massar points out that some courts have appointed options investors as lead plaintiffs in securities class actions. (Dkt. #24 at 4–5) (citing *Hall v. Medicis Pharm. Corp.*, No. CV08-1821, 2009 WL 648626, at *5 (D. Ariz. Mar. 11, 2009); *Medina v. Clovis Oncology, Inc.*, No. 15-CV-2546, 2016 WL 660133, at *4 (D.

---

[5] The Court also acknowledges that Massar may be subject to at least one additional unique defense. Specifically, Francis alleges that Massar also engaged in short selling during the Class Period. (Dkt. #18 at 3–4). Massar maintains that his Reata investment strategy did not include short sales. (Dkt. #24 at 7). However, because the Court concludes that Massar is atypical and/or subject to unique defenses based on his options trading, the Court need not address the short-selling question.

Colo. Feb. 18, 2016); *Goldstein v. Puda Coal, Inc.*, 827 F.Supp.2d 348, 355 (S.D.N.Y. 2011)). However, each of these cases is inapposite here.[6]

In *Hall*, the court appointed an options investor as lead plaintiff in a securities class action. 2009 WL 648626, at *5. However, the *Hall* court acknowledged a "divergence of authority on the subject" and noted that, had some evidence specific to the options investor been presented suggesting that "the nature of his options, the history of their purchase and sale, or some other factor made him inadequate to represent the class, then the Court might have occasion to disqualify [the lead plaintiff]." *Id.* at *4. For Massar, another factor has been presented that calls into question his typicality and adequacy: Massar made a material profit from his common-stock investments. Because one hundred percent of Massar's Reata-driven losses stemmed from option contracts, even under the standard applied in *Hall*, Massar is not qualified to act as lead plaintiff.

Similarly, the options investors deemed typical for purposes of appointing a lead plaintiff in *Goldstein* can be distinguished from Massar. In *Goldstein*, the court appointed an investor as lead plaintiff who had traded in and *suffered financial loss from* both options and common stock of the defendant company. *Goldstein*, 827 F.Supp.2d at 355. Here, as explained above, Massar incurred financial loss only

---

[6] Below, the Court distinguishes *Hall* and *Goldstein*. However, the Court does not distinguish *Medina* because it is unclear whether the lead plaintiff in that case traded in and suffered loss from both options and common stock. *Medina*, 2016 WL 660133, at *4. The decision only mentions that Arkin Group, the prevailing lead-plaintiff movant, suffered losses of nearly $13.4 million and "may have held securities that other members of the class did not, such as options." *Id.* at *3. While it is possible that Arkin Group held common stock and suffered financial loss from holding that common stock, the case does not make that clear.

from his option contracts and in fact profited from his Reata common-stock investments during the Class Period. For the foregoing reasons, the Court concludes that Massar is atypical of the class and does not qualify to serve as lead plaintiff.

Massar also cautions the Court against "redefin[ing] the putative Class to consist only of investors in Reata *common stock*." (Dkt. #24 at 6). However, the Court's denial of Massar's lead-plaintiff motion does not have the effect of restricting the putative class to investors holding exclusively common shares of Reata. Rather, the sole task of the Court presently is to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). Just because Massar, as an options investor, is disqualified from being the "most adequate" lead plaintiff does not mean that any Reata investors holding options are excluded from the class.

Finally, even if the Court were to conclude that Massar satisfies typicality, thus making him the presumptive lead plaintiff, that presumption would be rebutted because Massar's trading practices subject him to "unique defenses" concerning damages. *Gelt Trading v. Co-Diagnostics, Inc.*, No. 2:20-CV-00368, 2021 WL 913934, at *5 (D. Utah Mar. 10, 2021); *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, No. 2:12-CV-00042, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012). In this regard, the *Gelt Trading* case is instructive. In *Gelt Trading*, the court held that a lead-plaintiff movant who invested in options rather than common stock was subject to unique defenses regarding damages because "comparing damage calculations for

purchasers of stock and purchasers of options is like 'comparing apples to oranges.'" *Gelt Trading*, 2021 WL 913934, at *5 (quoting *Hecla Mining Co.*, 2012 WL 2872787, at *4). The *Gelt Trading* court reasoned that "the price and value of a single share of common stock is very different from the price and value of a single call option" because "[t]he options' valuable lives are limited, their value is conditional, and there is a large disparity between their price and their potential value." *Id.* (quoting *Hecla Mining Co.*, 2012 WL 2872787, at *4). The Court agrees with this reasoning, which applies to Massar. Even if Massar's holding and trading Reata options and shares were typical of the class, Massar is potentially subject to unique defenses concerning damages that likewise render Massar ineligible to serve as lead plaintiff.

Because Massar's trading practices are atypical of the class and, in any event, subject him to unique defenses, he is not the "most adequate plaintiff," and the Court denies his motion for appointment as lead plaintiff, (Dkt. #14).

### ii. Whether Francis Satisfies Rule 23's Adequacy and Typicality Requirements

The Court next considers whether Francis, having the second largest financial interest of the lead-plaintiff movants, satisfies the adequacy and typicality requirements of Rule 23, thus making him the presumptive lead plaintiff. Retirement System argues that Francis did not "provide[] the Court with anything more than bare bones information" and therefore did not make the requisite prima facie showing of adequacy or typicality. (Dkt. #21 at 12). In his initial motion for appointment as lead plaintiff, Francis stated that he "lives in New York[,] has been investing for over [twenty-five] years . . . has a college degree[,] and works in real estate and general

contracting." (Dkt. #8 at 5). Francis's submission of his required PSLRA certification, (Dkt. #8-3), in addition to Francis's aforementioned educational and professional background in investment and business transactions, represents all the background information that Francis provided. While Francis did not provide a wide breadth of information about himself, the Court is not persuaded by Retirement System's argument that Francis failed to present enough to show that he is typical and adequate.

Regarding Francis's typicality, the relevant inquiry is "whether the class representative's claims have the same essential characteristics of those of the putative class" and "arise from a similar course of conduct and share the same legal theory." *James*, 254 F.3d at 571. Francis's claims are clearly typical of the class's. Francis, like other members of the class, alleges that Reata violated the Securities Exchange Act by making false or misleading statements regarding Reata's business, and Francis purchased Reata common stock at allegedly artificially inflated prices. (Dkt. #8 at 5). In sum, the nature of Francis's financial interest in and claims against Reata suggests that the incentives of Francis "are aligned with those of the class." *Hohenstein*, 2012 WL 6625382, at *3 (quoting *Beck*, 457 F.3d at 295–96).

Francis likewise satisfies the adequacy requirement of Rule 23. The adequacy requirement is fulfilled when the lead-plaintiff movant makes a "showing [of] zeal and competence of the representative's counsel, and a willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Giovagnoli*, 2017 WL 11220692, at *4 (citing *Berger v.*

*Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)). As evident from Francis's motion, he has retained competent and experienced counsel who are prepared to litigate this action efficiently and aggressively. (Dkt. #8 at 6); (Dkt. #8-5). Francis has also expressed a "strong desire to prosecute these actions on behalf of the class," (Dkt. #8 at 5), and has attached a PSLRA certification revealing his willingness to serve as class representative, (Dkt. #8-3). Francis also contends that there is no known conflict between his claims and those asserted on behalf of the class. (Dkt. #18 at 7). In light of the foregoing, Francis has satisfied the typicality and adequacy requirements of Rule 23 and is the presumptive lead plaintiff.

This presumption that Francis is the "most adequate plaintiff" may only be rebutted by proof that he is subject to unique defenses or will not adequately and fairly represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Retirement System and the other lead-plaintiff movants have failed to provide such proof, and the Court is unaware of any such proof in the record.

Retirement System bases its argument as to Francis's inadequacy on the amount of background information that Francis provided. (Dkt. #21 at 7). Courts have occasionally cited a dearth of information provided by and about a lead-plaintiff movant as the basis for denying the movant's motion. *See, e.g.*, *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019); *Camp v. Qualcomm Inc.*, No. 18-CV-1208, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019); *Perez v. HEXO Corp.*, No. 19 CIV. 10965, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020). However, courts regularly reject the notion that detailed background

information is required by a lead-plaintiff movant to show that he or she is adequate and typical. *See Kasilingam v. Tilray, Inc.*, No. 1:20-CV-03459, 2020 WL 4530357, at *3 (S.D.N.Y. Aug. 6, 2020); *Borteanu v. Nikola Corp.*, No. CV-20-01797, 2020 WL 7392795, at *6 (D. Ariz. Dec. 15, 2020).

In *Boeing*, a family collectively moving for lead-plaintiff appointment offered only their PSLRA certification and place of residence in support of their candidacy. 2019 WL 6052399, at *5. The court admonished the movants for failing to provide information regarding their "level of financial sophistication . . . the general source of their wealth . . . [or] general information about their backgrounds, education, employment, or investment experience" and held that a "movant must supply *some* information about its ability to perform the role of lead plaintiff" in order to satisfy the Rule 23 requirements. *Id*. Similarly, in *Camp*, the court declined to appoint a lead-plaintiff movant for failing to "include any basic details about himself, *including where he lives or who he is specifically in his motion*." 2019 WL 277360, at *3 (emphasis added). And in *Perez*, the court opted not to appoint a lead-plaintiff movant who did not provide *any* information about himself, *e.g.*, "investment history, educational background, etc." 2020 WL 905753, at *3. While the movant in *Perez* supplied personal details after the opposing movants highlighted his prior non-disclosure of background information, the court was concerned, based on the movant's initial failure to disclose such information, about whether he, as lead-plaintiff, would "meaningfully oversee and control the prosecution of this consolidated class action." *Id*.

Here, unlike the prospective lead plaintiffs in *Boeing*, *Camp*, and *Perez*, Francis did provide basic background information about himself. Specifically, in his lead-plaintiff motion, Francis states his place of residence, provides that he has twenty-five years of investing experience, advises that he is college-educated, and enumerates the industries in which he works. (Dkt. #8 at 5). Francis also explains why his claims are typical of the class, describes his financial stakes in the matter, and cites a "strong desire" to litigate this action and represent the class. (Dkt. #8 at 5). The Court therefore concludes that *Boeing* and similar cases are distinguishable and that Francis has provided sufficient background information for the Court to make an informed lead-plaintiff determination. *See also Kasilingam*, 2020 WL 4530357, at *3; *Borteanu*, 2020 WL 7392795, at *6.

Retirement System also argues that, as an institutional investor, it should be afforded a preference to be appointed lead plaintiff. (Dkt. #21 at 9). Retirement System is correct that the PSLRA has been construed to afford a preference for securities fraud litigation to be directed by institutional investors. *See, e.g.*, *In re Veeco Instruments Inc., Sec. Litig.*, 233 F.R.D. 330, 332–33 (S.D.N.Y. 2005) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in [securities fraud litigation]."). However, a core goal of the PSLRA is to have any potential plaintiff class represented by "a member with a substantial financial interest in the recovery as incentive, monitor the litigation to prevent its being 'lawyer-driven.'" *Strong v. AthroCare Corp.*, No. A-08-CA-574-SS, 2008 WL 11334942, at *3 (W.D. Tex. Dec. 10, 2008) (quoting *In re*

*Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411–12 (S.D. Tex. 2000)). Those with a substantial financial interest in a private securities action are often institutional investors, but this "does not foreclose appointment of a fully competent individual investor," and "[i]n fact, to do otherwise would violate the plain language of the statute, and work to undermine the presumption crafted by Congress." *In re Alcatel Alsthom Sec. Litig.*, No. MDL 1263, 1999 WL 33756548, at *5 (E.D. Tex. June 7, 1999). Retirement System's status as an institutional investor, therefore, does not render it the presumptive lead plaintiff where Francis, with the largest financial stake in the suit, has otherwise made a prima facie showing of adequacy and typicality.

### D. Lead Counsel

Once the Court selects a lead plaintiff, that plaintiff can then choose lead counsel, subject to the Court's approval. 15 U.S.C. § 78u–4(a)(3)(B)(v). Francis has retained The Rosen Law Firm, P.A. as lead counsel and Steckler Wayne Cochran, PLLC as liaison counsel in this matter and has moved for the Court's approval. (Dkt. #7). The Court has reviewed the background and experience of each firm and is satisfied that each could adequately represent the plaintiff class in this action. (Dkt. #8-5, #8-6). Rosen Law has served as lead counsel in various securities class actions that have resulted in substantial recoveries for shareholders. (Dkt. #8-5). Steckler Wayne Cochran has many years of experience handling complex litigation, including certified class actions. (Dkt. #8-6). The Court therefore approves Francis's selection of lead counsel and liaison counsel.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion of Russell Francis, Sr. for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel, (Dkt. #7), and **DENIES** the Motion of Jason Childs for Appointment as Lead Plaintiff and Approval of His Selection of Counsel, (Dkt. #11), the Motion of Waterford Township General Employees Retirement System as Lead Plaintiff and Approval of Selection of Counsel, (Dkt. #13), and the Motion of Luke G. Massar for Appointment as Lead Plaintiff and Approval of Lead Counsel, (Dkt. #14).

The Court further **ORDERS** that Russell Francis, Sr. is appointed as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(a)(3)(B); and Francis's selection of The Rosen Law Firm, P.A. as lead counsel and Steckler Wayne Cochran, PLLC as liaison counsel are approved, pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(v).

**So ORDERED and SIGNED this 15th day of July, 2021.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE